UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Larry P. Raymer,** | Civil No. 08-6382 (MJD/JJG) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| **M. Cruz,** | |
| Respondent. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter comes to the undersigned on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1). Petitioner Larry Raymer, currently incarcerated at the federal prison in Duluth, is proceeding on his own behalf. Respondent M. Cruz, the warden at that prison (the Warden), is represented by Chad A. Blumenfield, Assistant U.S. Attorney. The petition is duly referred for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(a).

In his petition, Mr. Raymer (Raymer) challenges a Bureau of Prisons (BOP) policy that controls when prison officials assess eligibility of prisoners for placement in a halfway house.[1] The policy schedules this assessment seventeen to nineteen months before the projected release of the prisoner. Raymer contends that, because the Second Chance Act entitles him to halfway house placement and home confinement totaling eighteen months, the assessment must occur at

---

[1] Though various authorities use phrases such as "residential reentry centers," "community correctional centers," and "community correctional facilities," this Court will employ the term "halfway house" throughout this report, in the interests of clarity and uniformity.

least twenty-three to twenty-five months before his projected release. He further argues that the existing policy was promulgated in violation of the Administrative Procedure Act.

## A. The Second Chance Act

According to Raymer, the Second Chance Act entitles him to twelve months' placement at a halfway house and another six months' home confinement. The Warden argues that the Act does not grant Raymer any affirmative right to either form of placement.

Halfway house placements and home confinement are controlled by 18 U.S.C. § 3624(c), which was recently amended upon passage of the Second Chance Act on April 9, 2008. Pub.L. 110-199, § 251(a), 122 Stat. 692. The statute now provides in relevant part,

> (1) . . . The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> (2) . . . The authority under this subsection may be used to place a prisoner in home confinement for the shorter of ten percent of the term of imprisonment of that prisoner or six months.
>
> (3) . . . Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons [to direct the placement of prisoners under 18 U.S.C. §] 3621.
>
> . . . .
>
> (6) . . . The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection no later than 90 days after the date of enactment of the Second Chance Act . . . which shall ensure that placement in a community correctional facility by the Bureau of Prisons is—
>
> > (A) conducted in a manner consistent with section 3621(b) of this title;

2

>   (B) determined on an individual basis; and
>
>   (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

As different provisions govern halfway houses and home confinement, these are best addressed separately.

To determine how the statute controls the BOP's authority to place prisoners in a halfway house, it is best to begin with rules of statutory interpretation. If a statute is unambiguous, then a federal agency must comply with the clear language of the statute. But if a statute is ambiguous, and the agency advances an interpretation of the statute, that interpretation is usually entitled to some level of deference. Where an agency has yet to make a formal ruling that "carries the force of law" regarding the meaning of statutory language, the agency receives deference equal to its power to persuade. *Godinez-Arroyo v. Mukasey*, 540 F.3d 848, 850-51 (8th Cir. 2008); *Clark v. Dep't of Agriculture*, 537 F.3d 934, 939-40 (8th Cir. 2008).

Nothing in § 3624(c) expressly requires the BOP to place a prisoner in a halfway house. But paragraph (6) states that the BOP "shall ensure that placement in a community correctional facility . . . is . . . of sufficient duration to provide the greatest likelihood of successful reintegration into the community." This language implies the BOP should place prisoners in a halfway house for some amount of time.

This creates sufficient ambiguity to consider the persuasiveness of the Warden's position. Other than the clear twelve-month limit in paragraph (1), he contends that § 3624(c) and related statutes grant the BOP wide discretion regarding when and whether to place prisoners in halfway houses. This position is highly persuasive for several reasons.

Paragraph (1) requires the BOP to "ensure that a prisoner . . . spends a portion of the final months . . . under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." The paragraph adds that these conditions "*may* include" a halfway house. Although paragraph (1) mandates "conditions" to facilitate reentry into the community, those conditions do not necessarily include placement in a halfway house. To the contrary, the word "may" indicates that the BOP has discretion to place prisoners in any facility. *See infra* at 5.

Paragraph (3) provides that § 3624(c) shall not be construed to limit the discretion of the BOP under 18 U.S.C. § 3621(b). And in turn, that statute provides that the BOP "may designate any available penal or correctional facility that meets minimum standards" as the place of imprisonment, considering factors that include the resources of the facility and the history of the prisoner. So even though the BOP has a duty to facilitate prisoners' reentry into the community under § 3624(c), this duty does not limit its discretion to place a prisoner in any facility under § 3621(b), whether that facility is a prison or a halfway house.

This discretion is reinforced through clause (6)(A) of § 3624(c), which contemplates that placement in a halfway house is "conducted in a manner consistent with" § 3621(b). And clause (6)(B) further directs that such placement be "determined on an individual basis." In light of the discretion signaled by these two clauses, it is doubtful that clause (6)(C) requires any particular duration in a halfway house, if such placement is required at all.

As the Warden persuasively argues, if there is ambiguity regarding its authority to place prisoners in halfway houses, the statutory scheme as a whole grants the BOP wide discretion. As this interpretation is reasonable and persuasive, this Court must defer to it. Raymer accordingly has no affirmative right to twelve months' placement in a halfway house.

Regarding home confinement, § 3624(c)(2) unambiguously states that the BOP "*may . . . place a prisoner in home confinement[.]*"  By employing the permissive word "may," this statute grants the BOP discretion to award home confinement, which necessarily includes the discretion to deny such placement.  *Cf. Lopez v. Davis*, 531 U.S. 230, 241 (2001) (ruling that "may," in another statute governing the BOP's authority to determine conditions of confinement, granted discretion and did not mandate particular action).  For this reason, Raymer also is not entitled to home placement.

To sum up, the Second Chance Act does not require any particular period at a halfway house or in home confinement.  As a result, the Act also does not require the BOP to determine prisoners' eligibility for such placement at any particular time.  Because the BOP policy does not violate the Act, Raymer cannot obtain habeas relief on this basis.

**B.  The Administrative Procedure Act**

Raymer separately argues that, because the BOP did not properly solicit public notice and comment before issuing its policy, the policy violates the Administrative Procedure Act (APA).  The Warden counters that the policy is exempt from the notice and comment requirement.

The APA exempts "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice" from public notice and comment.  5 U.S.C. § 553(b)(3)(A).  To decide whether a rule or policy falls within this exemption, courts consider whether the rule is substantive or procedural.  Where a rule affects individual rights or obligations, it is substantive; where it explains existing law or regulations without affecting individual rights, it is procedural.  *McKenzie v. Bowen*, 787 F.2d 1216, 1222 (8th Cir. 1986); *Story v. Marsh*, 732 F.2d 1375, 1384 (8th Cir. 1984); *Shakopee Mdewakanton Sioux Cmty. v. Hope*, 798 F.Supp. 1399, 1403 (D.Minn. 1992).

The policy only provides a general timeframe for when prison officials assess prisoners' eligibility for a halfway house or home confinement. It does not supply any guidelines for how or whether prisoners qualify for such placement. As a result, the policy has no effect upon the underlying rights or obligations of prisoners. Thus the policy is procedural, exempting it from public notice and comment pursuant to the APA. Raymer's argument accordingly fails.

**C.     Concluding Remarks**

Raymer has two pending motions in this litigation. Through a motion to expedite (Doc. No. 12), Raymer contends that prison officials improperly denied him halfway house placement or home confinement. He alleges that, because prison records mistakenly show pending criminal charges against him, prison officials did not appropriately assess Raymer's eligibility for these placements.

This motion was evidently misfiled. According to the caption, the motion was intended for *Raymer v. Cruz*, No. 08-5198, another habeas case Raymer is currently pursuing. This Court will be contemporaneously issuing a report and recommendation in that matter as well. Being advised of that case, and mindful of the analysis in that report and recommendation, the misfiled motion does not raise any issues that have not already been decided there. For these reasons, the motion to expedite is appropriately denied as moot.

Raymer also brings a motion to amend (Doc. No. 14). In this motion, Raymer does not explain what relief he seeks, but it is possible to infer that he wants to add more documentation to the record.[2] Because Raymer's petition fails for other reasons, and because this analysis is not affected by any of the additional documentation, this motion is also properly denied as moot.

---

[2]     One of these documents indicates that prison officials evaluated Raymer's eligibility for placement in a halfway house. Consistent with the policy at issue here, the assessment was made in April 2009, approximately eighteen months before Raymer's projected release.

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Raymer's petition for a writ of habeas corpus (Doc. No. 1) be **DENIED.**

2. The pending motions in this matter (Doc. Nos. 12, 14) be **DENIED AS MOOT.**

3. This litigation be dismissed in its entirety and judgment entered.

Dated this 1st day of June, 2009.

s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **June 16, 2009**. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit.